It was alleged that the plaintiffs, a firm doing business in Boston, sold to the defendants a lot of bagging, and brought this action to recover the price thereof. The defence set up was that the transaction was had with one J. Y. Bryce, and that after shipment of the goods, they were seized in Norfolk as the property of Brice, to satisfy a certain debt he owed to a Norfolk house. The evidence as stated in the case agreed was substantially as follows: Said Brice, a witness for the plaintiffs, testified that about 11 October, 1873, he called at the store of defendants in the city of Charlotte, and told them that plaintiffs wished to sell cotton bagging, and solicited their order. Defendants replied that they would give thirteen and a half cents a yard for fifty rolls and requested witness to telegraph to plaintiffs to that effect, which was done. The witness also wrote to plaintiffs and in reply received their letter of date 14 October, 1873, inclosing him an invoice of the (154) goods (and a railroad receipt), shipped for defendants, which he delivered to the defendants properly endorsed. The goods not having arrived in due course of transit, the witness learned they had been attached in Portsmouth, Virginia, as his property in a proceeding by Reynolds Bros. against him, and at once informed defendants of this fact, asking if they proposed to assert their right to the property, to which defendants replied in the affirmative and stated that they would employ counsel to attend to the matter; that afterwards they handed witness a letter from counsel in Norfolk wishing to know the names of soon to be tried; that he subsequently learned from defendants that they had received $100 from Reynolds Bros. through a party in Charlotte, and in consideration thereof had transferred to Reynolds Bros. their claim to the goods.
The plaintiffs also introduced a paper writing sworn to by defendants and stating that they had ordered the goods of plaintiffs through Brice, to be paid for in thirty days, that the same were attached as aforesaid; that Bryce had no interest therein, and that they had shipped cotton to pay for the goods, but afterwards drew for the value of the cotton, supposing the bagging lost.
The plaintiffs also introduced the record of the said proceeding of Reynolds against Bryce, showing that on 22 October, 1873, Reynolds sued out an attachment against Bryce in the court of hustings, in Portsmouth, which was levied upon the goods, then in the possession of the Seaboard Roanoke railroad company, marked to Bryce at Charlotte. This record further showed that on 10 February, 1874, the defendants *Page 125 
filed a petition in said proceedings, claiming the goods levied on, and it appearing to said Court that the petitioner, by their attorneys for value received had surrendered to the plaintiffs all their interest in the property, and it further appearing that before said (155) surrender the petitioners were the owners in absolute equity of the same, it was considered and adjudged, by consent of parties, that the proceeds be paid to plaintiffs, that the order theretofore made be set aside, and the petitioners recover costs of petition of the plaintiffs.
One of the defendants testified in his own behalf that Bryce came to him about 11 October, 1873, and told him he had a lot of bagging to sell, and he told Bryce he would take fifty rolls when it arrived in Charlotte, if the quality and price suited him; that nothing was said about the plaintiffs or the price, except that Bryce would make it to the interest of witness to buy the goods, and that he was well pleased with the house from which he was buying. The witness denied that he requested Bryce to telegraph as aforesaid, or that he corresponded with said attorneys, or that he had endorsed the invoice and receipt; but he took the receipt to the depot and inquired for the bagging to see if the quality and price suited, and if so, he expected to buy it of Bryce. He further testified that Bryce informed him of the said proceedings in attachment and asked him for the use of defendant's name to protect the interest of the plaintiffs; that witness at first refused, but afterwards consented for him to thus use the name of defendants' firm if he would indemnify them against any loss that might result therefrom; that on failing to indemnify them, and the goods not having arrived, and knowing Bryce to be insolvent, the witness consented to a withdrawal of his firm name from the suit in Portsmouth on payment of $100 by Reynolds Bros. as damages, or to cover what he had lost by being compelled to buy bagging for his customers at retail prices in consequence of the nonarrival of the goods as aforesaid. It also appeared in evidence for the defendants, by the deposition of John E. Oats, that on 26 March, 1874, the defendants gave Reynolds Bros. a receipt for $100, for which they surrendered their interest (156) in said suit to them.
Upon issues submitted the jury found, 1st — that the defendants did not buy the goods in question of the plaintiffs; 2d — the defendants did not confirm or assume the contract of purchase.
His Honor, among other things, charged the jury that unless there was a contract, defendants could not in law be damaged by the nondelivery of the goods, but that the jury could take into consideration the defendants' explanation of what he meant by damages — the loss *Page 126 
and inconvenience by having to purchase bagging at retail prices. judgment for defendants. Appeal by plaintiffs.
The jury found that the defendants did not buy the goods of the plaintiffs, and therefore if there was no error in His Honor's charge, we have to take that to be true. We will not stop to consider whether there was error in that part of the case, because we are of the opinion that even if the first transaction between Bryce and the defendants did not amount to a purchase upon the part of the defendants, yet the transaction between Reynolds Bros. of Norfolk, and the defendants, made the defendants liable to the plaintiffs.
Taking the transaction to be as shown by the defendants themselves, the facts are, that Bryce, the agent of the plaintiffs, offered to sell to the defendants fifty rolls of bagging, and that defendants agreed to take the goods on arrival, if the goods and the price suited. That the goods were shipped by the plaintiffs from Boston to Charlotte, to Bryce, who gave the bill of loading and bill of goods to the defendants to receive and examine them, to see if they would take them. That the goods (157) never arrived, but were attached in transitu at Portsmouth on legal process at the instance of Reynolds Bros., creditors of Bryce. That in the suit of Reynolds Bros. against Bryce, in Portsmouth, the defendants intervened and claimed the goods as their property, saying "that on or about 14 October, 1873, we ordered of Messrs. Sever Wild of Boston, through Mr. Y. J. Brice of Charlotte, 50 rolls of bagging, to be paid for in 30 days. The said bagging was attached by Reynolds Bros, of Norfolk, for a debt of J. Y. Brice Co. We certify that J. Y. Brice Co. had no interest whatever in the bagging, and that we shipped cotton to pay for the same, but afterwards drew for the value of the cotton, supposing the bagging lost.
J. McLAUGHLIN SON.
The foregoing was sworn to by J. F. McLaughlin, one of the defendants, and filed in the said suit in Portsmouth. And the final decree in that suit declares that "on motion of J. McLaughlin son, by their attorneys, it is ordered, etc. And thereupon the said petitioners (McLaughlin son), by their attorneys, agreeing that for value received they have surrendered to the plaintiffs (Reynolds Bros.) all the interest they have in this suit, the said plaintiffs take all the interest the said petitioners claim in the property attached, to wit, 50 rolls of *Page 127 
bagging in this cause and it appearing to the Court by the evidence filed in the cause that the said petitioners (McLaughlin Son) were before the said surrender to the plaintiffs the owners in absolute equity of the said bagging by consent of parties, it is considered by the Court that * * * the proceeds of the sale of the bagging be paid to the plaintiffs, Reynolds Bros.
And then the defendants, McLaughlin Son, gave to Reynolds Bros. the following writing: Received of * * * Reynolds Bros. * * * $100, for which we surrender to said Reynolds Bros. (158) all the interest we have in the suit of Reynolds Bros. against J. Y. Bryce Co., now pending in the Court of Hustings, * * * in which suit we had filed a petition claiming the property attached, viz, fifty rolls of bagging, the said Reynolds Bros. to pay all the costs and to take all the interest we claim in said bagging." Signed by J. McLaughlin 
Son.
It is true that J. McLaughlin, the elder, who was examined as a witness, in the case before us, says that all this was done at the request of J. Y. Bryce, for the purpose of protecting the interests of the plaintiffs, Sever Wild. But it matters not at whose instance it was done, nor what the defendants say they meant, the meaning of these writings is that the defendants claimed the goods of the plaintiffs while they were in Portsmouth as their own property, and sold them to the Reynolds Bros. for a valuable consideration.
They converted them to their own use. His Honor erred in not telling the jury what these writings and proceedings meant, and what was their legal effect, and in leaving it to the jury to find, the testimony of McLaughlin, what he meant.
One of two things in manifest — the forwarding the goods from Boston by the plaintiffs, to Charlotte for the defendants, either vested it in the defendants or left it in the plaintiffs. If it vested it in the defendants they are liable as purchasers. If it left it in the plaintiffs, then the transaction between the defendants and Reynolds Bros. was a conversion. And in either event the defendants are liable.
PER CURIAM. Venire de novo.
Cited; Williams v. Lumber Co., 118 N.C. 939. *Page 128